UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK ARMANDO MORALES,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-06358-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Erick Armando Morales ("Petitioner") filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). This is Petitioner's second habeas case in this Court. See Armando Morales v. Mullin, No. 5:26-cv-03463-KES (C.D. Cal.) ("Armando Morales I"). Respondents have answered the Petition ("Answer" at Dkt. 9). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 7.) For the reasons explained below, the Petition is granted and Respondents

are directed to immediately release Petitioner from custody.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Prior Release from ICE Custody (December 2022).

On December 17, 2022, Petitioner entered the U.S. near El Paso, Texas and was arrested by U.S. Border Patrol. (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213).) Border patrol released Petitioner the same day "under Parole with ATD."[1] (Id.; see also Pet. at 4, ¶ 11(a) and 6, ¶ 13 (alleging Petitioner was previously released from immigration custody on December 17, 2022).)

### B. Beginning of Removal Proceedings (August 2023).

Almost a year later, on August 23, 2023, Petitioner reported to the San Bernardino ICE office and was served with a notice to appear ("NTA") initiating removal proceedings against him under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213)); see also Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-546-336 (Nicaragua), last accessed Nov. 5, 2026) (showing that removal proceedings commenced on or about August 29, 2023). Petitioner alleges that he is seeking asylum, withholding of removal, and cancellation of removal. (Pet. at 5, ¶ 11(c).)

Petitioner lived at liberty in the U.S. for the next three years. He has no criminal history. (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213).)

### C. In Absentia Removal Order (April 10, 2026).

On April 10, 2026, an immigration judge ("IJ") ordered Petitioner removed in absentia. (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213); Armando Morales I, Dkt. 1 at 6, ¶ 31.) Petitioner did not receive notice of this removal order or the

---

[1] ATD refers to ICE's "Alternatives to Detention" program. See generally ICE Portal, Immigration Guide, Alternatives to Detention (ATD), https://portal.ice.gov/immigration-guide/atd (last accessed Nov. 5, 2026).

hearing when it was issued. (Id. at 6, ¶ 31.) His immigration counsel had informed him that the next hearing in his case was scheduled for June 26, 2026. (Id. at 6, ¶ 32-33.)

**D. Arrest by ICE (May 7, 2026).**

On May 7, 2026, ICE officers "conducted a targeted enforcement operation to locate" Petitioner "at his last known residence" in Riverside, California. (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213).) Around 6:20 a.m. on May 7, 2026, the day of the targeted enforcement operation at Petitioner's residence, "officers observed an individual matching [Petitioner's] physical description and photograph walking from the residence" and "made contact with [Petitioner] as he was walking on the sidewalk." (Id.) The officers "conducted an interview and it was determined to be [Petitioner]." (Id.) He "was taken into ICE custody without incident." (Id.)

None of the ICE documents provided by Respondents explicitly state what triggered this enforcement operation or Petitioner's re-detention. Based on the history recounted in the DHS Form I-213, it appears to have been triggered by a notation in ICE records that "[o]n April 10, 2026, an immigration judge ["IJ"] ordered [Petitioner] removed in absentia." (Answer Ex. C / Dkt. 9-3 at 2 (DHS Form I-213); see also Answer at 2 ("Petitioner was detained after an [IJ] ordered him removed….").)

Petitioner only became aware of the removal order after ICE arrested him. (Armando Morales I, Dkt. 1 at 6, ¶ 31.) He thereafter moved the immigration court to reopen his removal case, and that request was granted. (Id., ¶ 34; see also Answer at 2 ("[Petitioner's] proceedings were subsequently reopened.").) He currently has an individual hearing scheduled for November 10, 2026. See EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-546-336 (Nicaragua), last accessed Nov. 5, 2026).

**E. Prior Habeas Petition (June-July 2026).**

On June 23, 2026, Petitioner filed a counseled habeas petition in this Court. (Armando Morales I, Dkt. 1.) The petition raised two claims: (1) "the Government's application of § 1225(b)(2) to preclude Petitioner from obtaining a bond redetermination hearing before an [IJ] [was] arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act" (id. at 7, ¶ 40); and (2) "the government's detention of Petitioner without a bond redetermination hearing to determine whether Petition is a flight risk or danger to other[s] violate[d] Petitioner's right to due process" (id. at 7, ¶ 44). The petition asked the Court to order Respondents to "release Petitioner or, in the alternative, to provide Petitioner with the bond hearing to which Petitioner is legally entitled within seven (7) days." (Id. at 8.)

Respondents answered the petition and admitted that Petitioner was entitled to a bond hearing under § 1226(a) and Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025) (certifying "Bond Eligible Class" of noncitizens who entered without inspection, were not apprehended upon arrival, and are not subject to detention under § 1226(c), § 1225(b)(1), or § 1231 when DHS makes an initial custody determination). (Id., Dkt. 10.)[2]

On July 9, 2026, the Court granted the petition and ordered, "Respondents are enjoined from continuing to detain [Petitioner] unless he is provided with an individualized bond hearing before an [IJ] pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order." (Id., Dkt. 11.)

[2] The Ninth Circuit subsequently agreed with Maldonado Bautista's conclusion that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026).

**F. Bond Hearing (July 15, 2026).**

On July 15, 2026, Petitioner had a bond hearing before an IJ. (Answer Ex. A / Dkt. 19-1 (IJ's bond order).) The IJ found that Petitioner "failed to meet his burden to establish that he is not a flight risk." (Id.) The IJ's order does not contain any facts or explanation for this determination.[3]

**G. Current Detention Status.**

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 246-546-336 (Nicaragua), last accessed Nov. 5, 2026).

On October 29, 2026, DHS served Petitioner with notice that, on the same day as his individual hearing, November 10, 2026, he would be provided with a Rodriguez bond hearing. (Answer Ex. B / Dkt. 9-2.)[4]

**H. Habeas Proceedings.**

Petitioner filed the present, pro se Petition on October 27, 2026, raising the following claims:

Ground 1: Petitioner's "re-detention violates the procedural due process requirements of the Fifth Amendment." (Pet. at 6, ¶ 13.) "ICE determined that

---

[3] The IJ noted, "Should [Petitioner] appeal the Court's custody redetermination decision to the Board of Immigration Appeals, this Court will provide a more fulsome memorandum to facilitate review of the appeal." (Answer Ex. A / Dkt. 9-1 at 2.) Petitioner reserved his right to appeal (id.), but it is not clear whether he has done so.

[4] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding … where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026).

[Petitioner] was not a danger or flight risk when they released [him] on or about 12/17/2022. After they released [him], [he] lived for more than 3 y[ea]rs outside of immigration custody. Then, ICE re-detained [him] on 05/07/2026 without giving [him] any prior notice. ICE did not provide [Petitioner] with any reason for why [he] was being re-arrested or give [him] a chance to contest [his] arrest." (Id.)

Ground 2: Petitioner's "re-detention violates the substantive due process requirements of the Fifth Amendment" because Petitioner does "not have any criminal history" and is "not a danger to the community or a flight risk." (Pet. at 6, ¶ 13.)

Ground 3: "ICE acted arbitrarily and capriciously when it re-detained [Petitioner], in violation of the Administrative Procedure Act ["APA"]," because "there has been no material change of circumstances to justify [his] detention." (Pet. at 6, ¶ 13.)

The Petition seeks Petitioner's immediate release from detention and prospective injunctive relief preventing his re-detention without "at least seven (7) days' notice and a pre-deprivation hearing before an [IJ]." (Id. at 7.)

Respondents answered the Petition on Nov. 3, 2026. (Dkt. 9.) They argue that Petitioner's claims are barred by the abuse-of-the-writ doctrine (id. at 2-3); Petitioner has not exhausted administrative remedies (id. at 4-5); and this Court "should not reweigh the evidence considered by the IJ at the bond hearing" (id. at 5-7).

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 1, Because Respondents Violated His Due Process Rights By Re-Detaining Him Without a Pre-Deprivation Hearing.

#### 1. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due

process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Analysis.**

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual

may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025).

Like the noncitizens in those cases, Petitioner was previously released from ICE custody in December 2022 and lived at liberty in the U.S. for the next three and a half years. He had a liberty interest, protected by the Fifth Amendment Due Process Clause, in remaining out of ICE custody. Thus, the first Mathews factor favors Petitioner.

b. Risk of erroneous deprivation and value of additional procedural safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

The facts of this case demonstrate the value of such additional safeguards. There is no evidence that Petitioner was ever served with notice of why his prior release was being revoked. Even internal ICE records do not clearly explain why his release was revoked. Respondents now contend that the revocation was due to an in absentia removal order issued in April 2026. Even assuming that is accurate, Respondents admit that the removal order was later rescinded, and Petitioner's removal case was reopened. This demonstrates that an IJ found that Petitioner's failure to appear for removal proceedings was because (i) of exceptional

circumstances, or (ii) he did not receive proper notice of the proceedings. See generally 8 U.S.C. § 1229a(b)(5)(C)(i). The later appears to be applicable here, as Petitioner alleged in his previous habeas case that he "only became aware of the removal order after he was detained by ICE on May 7, 2026," and that his immigration counsel had "informed Petitioner of his next hearing originally scheduled for June 26, 2026." (Armando Morales I, Dkt. 1 at 6, ¶¶ 30-34.) These circumstances could have been explained at a pre-deprivation hearing and could have resulted in ICE or an IJ deciding not to detain him.

Instead, Respondents held him without bond under § 1225(b)(1)(A) until he filed a habeas petition in this Court in Morales I. Only then—more than two months after his arrest and only pursuant to an order of this Court—was Petitioner given an opportunity to respond to the reasons for his re-detention via a bond hearing. Respondents do not allege that Petitioner has committed a crime or otherwise violated the conditions of his release. The sole basis for the re-detention appears to be the removal order, which has now been rescinded.[5]

A pre-deprivation hearing requires the government to produce its evidence of changed circumstances, danger to the community, and flight risk, and it gives Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard. Accordingly, the second Mathews factor favors Petitioner.

---

[5] As noted above, the record does not contain any explanation for the IJ's finding that Petitioner is a flight risk. It is unclear whether the in absentia removal order had been rescinded at that point or remained in effect. Either way, granting relief on Ground 1 of the Petition does not require this Court to "reweigh the evidence considered by the IJ at the bond hearing" (Answer at 5), as Respondents suggest. The Court is merely finding that this hearing, by itself, was insufficient to protect Petitioner's procedural due process rights.

c. Countervailing government interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to

recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026). Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**B. The Abuse of the Writ Doctrine Does Not Bar the Court from Granting Relief on Ground 1.**

**1. Legal Standard.**

The common law abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Eldridge v. Howard, 70 F.4th 543, 551 (9th Cir. 2023) (citation omitted).[6] The court must "decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application." Id. at 552. For example, a "petitioner had no fair opportunity to raise the claim in the prior application if [1] the claim was not yet ripe at the time of the first petition, or [2] where the alleged violation occurred only after the denial of the first petition." Id. (citation and quotation marks omitted).

---

[6] "Although the Antiterrorism and Effective Death Penalty Act of 1996 … imposes restrictions on second or successive habeas petitions under 28 U.S.C. 2254, those restrictions do not apply to petitions brought under § 2241." Elester v. Warden, No. 1:26-cv-03801-JLT-HBK (HC), 2026 WL 2935738, at *2, 2026 U.S. Dist. LEXIS 224251 (E.D. Cal. Sept. 30, 2026) (citing Barapind v. Reno, 225 F.3d 1100, 1110 (9th Cir. 2000)).

"The government bears the burden of pleading abuse of the writ." Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) (declining to reach the issue because the government did not plead it). "This burden is satisfied if the government, with clarity and particularity, notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then shifts to petitioner." McCleskey v. Zant, 499 U.S. 467, 468 (1991), superseded by statute in part as stated in Banister v. Davis, 590 U.S. 504 (2020). "[I]f [the petitioner] cannot show cause [for failure to raise the claim earlier,] the failure to earlier raise the claim may nonetheless be excused if [the petitioner] can show that a fundamental miscarriage of justice—[e.g.,] the conviction of an innocent person—would result from a failure to entertain the claim." Id.

**2. Analysis.**

Respondents argue, "[T]he allegations and claims asserted in" the current Petition "are largely identical to those asserted in his first petition," because "like his prior petition, Petitioner again challenges his immigration detention." (Answer at 3.) The fact that both petitions challenge the same immigration detention does not necessarily render the second petition an abuse of the writ. See, e.g., Tellez Fuga v. Warden, No. 1:26-cv-04842, 2026 WL 3181253, at *3 (E.D. Cal. Oct. 23, 2026) ("Given that prolonged detention claims are inherently dynamic and evolve as the time in detention lengthens, the Court recommends finding that dismissal is not warranted for abuse of the writ.").

Although the prior, counseled petition argued that Respondents had violated Petitioner's due process rights, it did not explicitly state whether those rights had been violated because ICE failed to give Petitioner a bond hearing *before* detaining him, or because they had failed to do so *after* detaining him. (See Armando Morales I, Dkt. 1 at 7, ¶ 44 (arguing that "the government's detention of Petitioner without a bond redetermination hearing to determine whether Petition is a flight

risk or danger to other[s] violate[d] Petitioner's right to due process").) At that time, DHS had refused to give Petitioner a bond hearing even *after* he was detained, because they contended that he was subject to mandatory detention under § 1225(b)(2). (See id. at 7, ¶ 40.) The petition also did not seek prospective injunctive relief, as the current Petition does. (Compare id. at 8 with Pet. at 7.) Accordingly, it is not at all clear that the prior petition raised the same due process claim as the current Petition.

To the extent that claim could have been raised, but was not, Petitioner has shown good cause and prejudice based on ineffective assistance of prior counsel and/or the rapidly evolving nature of the case law in this area. See, e.g., Islamov v. Larose, No. 26-cv-4219, 2026 WL 2644087, at *2, 2026 U.S. Dist. LEXIS 202692, at *4-7 (S.D. Cal. Sept. 8, 2026) (finding "cause exists for this current claim because of the ineffective assistance of counsel in his first petition and the rapidly evolving law"). Additionally, it would be a miscarriage of justice for Petitioner to remain in immigration custody, in violation of his due process rights, simply because his prior counsel failed to identify or clearly articulate this due process claim. See, e.g., Villatoro v. Mullin, No. 5:26-cv-04488-MWC-DSR, 2026 WL 2507725, at *6, 2026 U.S. Dist. LEXIS 193102, at *18 (C.D. Cal. Aug. 25, 2026) ("[B]ecause the Court finds, contrary to the New Jersey Order, that the Due Process Clause affords Petitioner pre-deprivation procedures prior to his detention, … the 'Court finds that it would be a quintessential miscarriage of justice to decline to hear the argument of someone who should not have been redetained in the first place nearly [thirteen] months later on procedural grounds.'") (citation omitted); Yu v. Warden of the California City Det. Ctr., No. 26-cv-04075, 2026 WL 1972560, at *4, 2026 U.S. Dist. LEXIS 150926, at *10 (E.D. Cal. July 8, 2026) ("[R]espondents' own recent (and sweeping) policy changes have caused rapid and unprecedented legal developments in the relevant immigration caselaw. … It would be a miscarriage of justice to penalize petitioner for refining her legal

claims in a subsequent habeas petition and citing applicable authority to support her claims for relief.”). Accordingly, the Court declines to deny the current Petition based on the abuse of the writ doctrine.

**C. The Exhaustion of Administrative Remedies Doctrine Does Not Bar the Court from Granting Relief on Ground 1.**

**1. Legal Standard.**

For habeas petitions properly filed under 28 U.S.C. § 2241, like the present Petition, the exhaustion requirement is prudential, rather than jurisdictional. Courts deciding whether to require prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

“Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if ‘administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.” Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

“Exhaustion is futile where continuing administrative proceedings ‘would clearly be of no avail,’ Fones4All Corp. v. FCC, 550 F.3d 811, 818 (9th Cir. 2008), where there is ‘certainty of an adverse decision,’ Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney, 932 F.3d 1207, 1219 (9th Cir. 2019), or

where there is 'undisputed evidence of administrative bias,' White Mountain [Apache Tribe v. Hodel], 840 F.2d [675,] 677 [9th Cir. 1988]." Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior, 819 F. App'x 480, 482 (9th Cir. 2020). However, the exhaustion requirement is only to be waived in "exceptional circumstances," and Petitioner bears the burden to demonstrate futility. Id. (quoting White Mountain, 840 F.3d at 677); see Leonardo, 646 F.3d at 1161.

**2. Analysis.**

Respondents argue that Petitioner should be required to appeal the July 2026 bond order to the BIA before he can raise the due process claim in Ground 1. (Answer at 4.) However, Petitioner is not challenging the July 2026 denial of bond. He is arguing that his due process were violated earlier, when ICE arrested him, because DHS failed to provide him with a pre-deprivation bond hearing. Requiring him to exhaust this claim in immigration court is unnecessary and futile, because neither the INA nor DHS regulations require such a hearing. It would also cause irreparable injury by prolonging his detention. See, e.g., Mendoza v. Noem, No. 25-cv-3227-MWF-AGR, 2026 WL 923311, at *5, 2026 U.S. Dist. LEXIS 75624 (C.D. Cal. Apr. 1, 2026) ("[T]he Government argued that the BIA would be in a better position to review the reasoning behind the IJ's decision. But it is not clear to the Court what information the BIA would have at its disposal beyond what has been provided on this Application. … As other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost certainly unlawful, and thus would suffer irreparable injury."); Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *11, 2026 U.S. Dist. LEXIS 46944 (C.D. Cal. Mar. 5, 2026) ("[R]equiring Miri to go before the [BIA] would prolong his unconstitutional detention, thereby causing irreparable injury. … Taken together, the Court, in weighing the Puga factors, finds that Miri was not required to exhaust administrative remedies given the questions of law at issue. This

decision is consistent with Hernandez, where the Ninth Circuit waived the exhaustion requirement given that the question before the Court involved a legal challenge."). Accordingly, the Court waives the exhaustion of administrative remedies requirement for Ground 1 of the Petition.

**D. Grounds 2 and 3 Are Dismissed as Moot.**

Because granting relief on Ground 1 grants all of the relief sought in the Petition, there is no further relief the Court can grant on Grounds 2 and 3. Accordingly, these claims are dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition are granted and Grounds 2 and 3 are dismissed as moot.
2. Respondents shall **immediately release** Erick Armando Morales (A# 246-546-336) from custody.
3. Within **three (3) days** of the date of this order, Respondents shall file a Notice of Release confirming Petitioner has been released from custody.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: November 6, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE